# OCTOBER TERM, 1868.

MARTIN VS. THE WESTERN UNION RAILROAD COMPANY.

*Negligence : Pleadings and proof — Contributory negligence. — Nonsuit.*

1. Negligence *either* in running a railroad train through a city at an unlawful speed, *or* in opening grates and flues about the boiler in a careless manner, thereby allowing cinders to be thrown upon plaintiff's premises in said city, would be a sufficient ground of recovery for injuries to property by fire thus caused.

2. Proof of negligence in *one* of these particulars held sufficient, where *both* were alleged.

3. The fact that part of a pane of glass was out of the window of plaintiff's house, adjoining defendant's road, and that the damage was caused by sparks blown through the window from defendant's engine (which was being driven at an unlawful speed), *held* not such evidence of contributory negligence as would prevent a recovery.

4. Error in refusing a nonsuit is cured, where the required evidence is afterward supplied.

APPEAL from the Circuit Court for *Rock* County.

Action to recover damages for the loss of goods destroyed by fire at the city of Beloit, through the alleged negligence of the defendant. The allegation as to negligence was as follows: "that defendant  *   *   ran a train of cars at an unlawful and unusual rate of speed, out of said city, and within said city limits,  *   *   in a most reckless, negligent and careless manner, by opening the grates and flues under and around the loco-

motive engine boiler, thereby allowing fire, coals, sparks and cinders to be thrown in all directions in and about the plaintiff's premises, thereby setting fire to the plaintiff's goods," etc. The plaintiff, on the trial, rested without proving that the fire occurred within the city limits, or that the defendant had "opened the grates and flues under and around the boiler," etc., in a careless manner. Defendant thereupon moved for a nonsuit, but the motion was denied, and the evidence as to the *locus in quo* of the fire was afterward supplied. Enough for the further understanding of the case is stated in the opinion. Verdict and judgment for the plaintiff; new trial denied, and appeal by the defendant.

*Fuller & Dyer*, for appellant, to the point that a nonsuit should have been granted, cited *Smith v. Sanger*, 3 Barb. 360; *Stewart v. Simpson*, 1 Wend. 376; *Rudd v. Davis*, 3 Hill, 287; *Carpenter v. Smith*, 10 Barb. 663; *Bidwell v. Lament*, 17 How. 359. To the point that the verdict should have been set aside, they cited *Beveridge v. Welsh*, 7 Wis. 465; *Whalon v. Blackburn*, 14 id. 432. The evidence, even of the plaintiff's own witnesses, proved the utter impossibility of preventing the escape of sparks from a locomotive, especially when drawing, as in this case, a heavy train around a curve, and upon an up grade, and it is submitted that there is no liability attaching to the defendant, since it is a common law principle "that an action will not lie for the reasonable use of one's own right, though it may be to the injury of another." As to the liability of railroad companies for fire, see *Burroughs v. The Housatonic R. R. Co.*, 15 Conn. 124; *B. and S. R. R. v. Woodruff*, 4 Ind. 242; *Road v. N. Y. and E. Railway*, 18 Barb. 80; *Lyman v. Boston and W. Railway*, 4 Cush. 288.

*C. N. Parsons*, for respondent, to the point that the alleged variance between the pleadings and the proof was immaterial, as the defendant could not have been surprised or misled

thereby, cited *Eastman v. Bennett*, 6 Wis. 232; *Knowlton v. Brown*, 7 id. 500; *Frank v. Avery*, 21 id. 166; *Underhill v. Harlem R. R. Co.*, 21 Barb. 497; *Rogers v. Verona*, 1 Bosw. 417; 10 Barb. 180; 6 Duer, 294, 587. On the question of negligence, *Potter v. The C. and N. W. R. R. Co.*, 21 Wis. 372; *Sika v. The Same*, id. 370; *Conger v. G. and C. W. R. R. Co.*, 17 id. 477; *Langhoff v. M. and P. du C. R. R. Co.*, 19 id. 489; 18 id. 331; 19 id. 489, 610.

Dixon, C. J. Where the evidence for want of which a motion for a nonsuit ought to have been granted, is afterward supplied, the error in refusing to allow the motion is cured. The judgment will not be reversed, nor a new trial granted, merely because the evidence was not before the court when the nonsuit was asked. *Barton v. Kane*, 17 Wis. 37; *Dodge v. McDonnell*, 14 id. 553. The rule applies here, and is decisive of all the grounds taken in support of the motion for nonsuit, except the last. Evidence was subsequently given that the place where the train was running, and where the fire occurred, was, as averred in the complaint, within the limits of the city of Beloit.

The last ground for the motion involves the same question subsequently presented by the instruction asked by the defendant, and which was refused, and may best be considered in connection with that instruction. The complaint, in substance, alleges the negligence of the defendant in causing the fire to have consisted in running the train at an unlawful and unusual rate of speed within the city limits, and in opening the grates and flues under and around the engine boiler in a reckless, negligent and careless manner, thereby allowing fire, coal, sparks and cinders to be thrown in and about the premises occupied by the plaintiff. Of the latter allegation no proof was given; and the question is, whether the plaintiff can recover upon proof of negligence in the former particular only. Counsel for

the defendant, while apparently conceding that the running of the train at an unlawful rate of speed within the city limits would be sufficient to charge the company with the loss, if that alone had been alleged, yet, as the other acts of negligence are also averred, insist that they, too, must be proved before there can be any recovery on the part of the plaintiff. We have no doubt that the danger to buildings and other adjacent property liable to injury and destruction by fire, caused by the emission of coals and sparks from the engine when in rapid motion, was one of the mischiefs which the statute limiting the rate of speed through cities and villages was designed to prevent, and are consequently of opinion that for losses so occasioned by trains moving at a greater rate of speed than the statute prescribes, the company is responsible. With this view of the law, which is not seriously contested, it would not seem material to the plaintiff's right of action in this case, that the other acts of negligence set out in the complaint were not proved. It is not, as argued by counsel, the averment of one kind of negligence in the complaint and proof of another at the trial, but the averment of negligence in two different respects, either of which is sufficient to authorize a recovery, and proof upon trial in one respect only. The latter we suppose to be admissible within all the rules of pleading and evidence.

The next question arises upon the motion for a new trial, and is as to whether there was any evidence upon which the jury were authorized in finding that the train was running at a rate exceeding six miles an hour. · The testimony upon this point is conflicting. The plaintiff testifies that the train was running very fast; that she never saw a freight train run so fast through the city before nor since; and that she should think it was running at least eight miles per hour. Mary Wilkinson, another witness on the part of the plaintiff, testifies that she saw the train running very fast, and throwing a good deal of fire, and that the cars were running faster than usual, which

drew her attention to the train. Two witnesses on the part of the defendant, the engineer and baggageman on board the train, testify that it was not running to exceed five miles per hour. Here, certainly, was not an entire want of evidence to support the verdict. The question was not one to be settled with the greatest certainty by the testimony of witnesses; and whether the jury should believe the plaintiff and her witness or the witnesses of the defendant, was a question for the jury to determine. There may have been circumstances attending the examination of the engineer and baggageman which led the jury to discredit them. Other facts may have had their influence, especially the strongly corroborative, one as to the length of time occupied in running the train to the next station, a distance of over nine miles, in twenty-five minutes. Allowing twelve minutes for the running of the first mile at the rate of five miles per hour, according to the highest rate of speed fixed by the engineer and baggageman, and the other eight miles and upward must have been run at the rate of nearly forty miles per hour, with a train consisting of seventeen freight cars and a caboose. With this fact before them, by the testimony of the engineer himself, the jury may very reasonably have believed that both he and the baggageman were mistaken in their estimate of the time occupied in running the first mile, and that the rate exceeded six miles per hour; and if the jury did so believe, who shall say that they were in error? Certainly we cannot; and still more certainly are we unable to say that the verdict is wholly unsupported by evidence, as we must do before the judgment can be reversed upon this ground.

The only remaining question is as to the alleged negligence of the plaintiff in permitting about one-fourth of a pane of glass to be out of the window of her house, through which the sparks are supposed to have passed and set fire to the clothing upon the inside. It does not appear when the glass was broken, or

that the plaintiff knew it before the time of the fire.    But sup-
pose it had been broken for a long time, and the plaintiff
knew it, it is but an exceedingly slight circumstance upon
which to base the charge of negligence against her so as to
prevent a recovery.    The burning happened at a warm season
of the year, when it is customary for most people, and con-
venience and comfort require them, to keep the windows of
their houses wholly or partially open.    Suppose, in such case,
that the plaintiff's window had, according to the general cus-
tom, been open, and the sparks had entered in that way, would
it have been such a careless or improper use of her house as
would have defeated the action?    Are the occupants of adja-
cent dwellings required to exercise so much care to prevent
accidents of this nature happening from trains passing at an
unlawful rate of speed, that they must, contrary to common
usage, keep the windows closed when it would otherwise be
most convenient and comfortable to have them opened?    It
seems clear to us that both these questions must be answered
in the negative; and if they are, then the question here pre-
sented must also receive a negative answer.    If it would not
have been negligence in the plaintiff to have had the window
open at the time, it clearly was not that a small part of a pane
of glass was gone, and that she had neglected to have it
replaced.

It follows from these views that the judgment must be
affirmed.

*By the Court.* — Judgment affirmed.